UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HOANG NGOC DAO,<br><br>                Petitioner,<br>    v.<br><br>PAMELA BONDI et al.,<br><br>                Respondents. | CASE NO. 2:25-cv-02340-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

      This matter comes before the Court on Petitioner Hoang Ngoc Dao's petition for a writ of habeas corpus and request for injunctive relief. Dkt. No. 1. Dao requests an order (1) requiring Respondents to release him from custody, (2) barring Respondents from re-detaining him without notice and hearing, and (3) barring Respondents from removing him to a third country or, alternatively, barring Respondents from removing him to a third country without being provided notice and an opportunity to respond. *Id.* at 20–23.

      The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide

whether [the petitioner's] detention is authorized by statute"). For the reasons stated below, the Court grants in part and denies in part Dao's petition.

## I. BACKGROUND

Dao was born in in Vietnam in 1979 and was a Legal Permanent Resident of the United States from 1980 to May 2025. Dkt. No. 11 at 1–2. On February 26, 2009, Dao pleaded guilty to Possession of Marijuana in violation of Section 11357(a) of the California Health & Safety Code in California Superior Court and was sentenced to time served and three years of probation. *See id.* at 2. Dao was also convicted of Possession of Marijuana for Sale in violation of Section 11360 of the California Health & Safety Code on October 1, 2010, and sentenced to five days of imprisonment and three years of probation. *Id.* On or about December 8, 2011, Border Patrol issued Dao a Notice to Appear charging him as removable under 8 U.S.C. § 1182(a)(2)(A)(i)(I) because he admitted to or was convicted of a crime involving "moral turpitude . . . or an attempt or conspiracy to commit such a crime." *Id.* On May 1, 2012, an immigration judge in San Diego granted Dao's application for cancellation of removal under 8 U.S.C. § 1229b. *Id.* at 3.

On November 20, 2024, Dao was indicted in the United States District Court for the District of Arizona for one count of conspiracy to transport illegal noncitizens for profit in violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I), (a)(1)(A)(ii), and (a)(1)(B)(i); and three counts of transportation of illegal noncitizens for profit in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(1)(B)(i). *USA v. Dao*, 4:24-cr-08203-JGZ-MAA, Dkt. No. 19 (D. Ariz. Nov. 20, 2024). In December 2024, Dao waived prosecution by indictment and pleaded guilty to an Information charging him with one count of transportation of illegal noncitizens for profit in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(1)(B)(i). *Id.*, Dkt. Nos. 25, 26, 30. Dao was sentenced to 36 months of probation on February 27, 2025, *id.*, Dkt. No. 41, and was taken into ICE custody the following day, Dkt. No. 11 at 4.

On March 4, 2025, Ice Enforcement and Removal Operations issued Dao another Notice to Appear charging him as removable under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") because after admission, he had been "convicted of an aggravated felony as defined in section 101(a)(43)(N) of the [INA], a law relating to an offense described in paragraph (1)(A)or (2) of section 274(a) of the [INA] (relating to alien smuggling), except in the case of a first offense for which the [noncitizen] has affirmatively shown that the [noncitizen] committed the offense for the purpose of assisting, abetting, or aiding only the [noncitizen's] spouse, child, or parent (and no other individual) to violate a provision of th[e] [INA]." Dkt. No. 11 at 4; *see also* Dkt. No. 10-1 at 2, 5.

On May 19, 2025, an immigration judge terminated Dao's permanent resident status and ordered him removed to Vietnam. Dkt. No. 10-3 at 2–3. Dao waived appeal as well as "the opportunity to apply for asylum, withholding of removal, and withholding under convention against torture and adjustment of status." *Id.* at 3–4. He has been detained at the Northwest ICE Processing Center ("NWIPC") since approximately February 27, 2025, the date ICE took him into custody after he was sentenced in his federal criminal case. Dkt. No. 1 at 8.

On November 21, 2025, Dao filed a petition for writ of habeas corpus. Dkt. No. 1. Respondents[1] filed a return memorandum opposing the petition. Dkt. No. 9.

## II. DISCUSSION

Dao asserts three grounds for relief: 1) Fifth Amendment Due Process violation for indefinite detention; 2) violations of the Fifth Amendment, the Convention Against Torture and

---

[1] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary." (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

its Implementing Regulations, and the Administrative Procedure Act for potential third country removal; and 3) violations of the Fifth and Eighth Amendments for potential third country removal. Dkt. No. 1 at 20–23.

## A. Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *see also Ben-Sholom v. Ayers*, 674 F.3d 1095, 1099 (9th Cir. 2012).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001) (citing *Campos-Sanchez v. I.N.S.*, 164 F.3d 448, 450 (9th Cir. 1999), *superseded by statute on other grounds as recognized in Arizmendi-Medina v. Garland*, 69 F.4th 1043, 1052 (9th Cir. 2023)). Accordingly, the Supreme Court has held that "the Due Process Clause protects a[] [noncitizen] subject to a final order of deportation[.]" *Zadvydas v. Davis*, 533 U.S. 678, 693–94 (2001) (citing *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)); *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

The federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). A plaintiff seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the

balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

**B.      The Court Grants Dao's Request for Release**

       1.    <u>Removals to Vietnam</u>

After the Vietnam War ended in 1975, the United States accepted "hundreds of thousands of Vietnamese refugees" under various humanitarian programs, *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1083 (C.D. Cal. 2020) (summarizing history), including Dao and his parents, *see* Dkt. No. 1 at 5. "In 1995, the U.S. and Vietnam established diplomatic relations; however, there was still no existing repatriation agreement between the countries." *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 147 (D. Mass. 2025); *see also* Executive Office of the President, *Remarks Announcing the Normalization of Diplomatic Relations With Vietnam*, 1995 WL 18254812 (July 11, 1995). "Between the end of the Vietnam War and 2008, Vietnam refused to repatriate any Vietnamese immigrants who had been ordered removed from the United States." *Trinh*, 466 F. Supp. 3d at 1083. In 2008, Vietnam agreed to begin accepting "repatriation requests for Vietnamese immigrants who had arrived in the United States after July 12, 1995," but that agreement provided that "Vietnamese citizens are not subject to return to Vietnam under this agreement if they arrived in the United States before July 12, 1995." *Id.* (citation modified).

"Over the years, ICE has undertaken a number of negotiations with the Government of Vietnam to establish a process for regularized removals of final order Vietnamese citizens who entered the U.S. before 1995." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 714 (W.D. Wash. 2025)

(citation modified). On November 21, 2020, the United States and Vietnam entered into a Memorandum of Understanding ("MOU") regarding pre-1995 Vietnamese immigrants. *See generally* Dkt. No. 1-1. The purpose of the MOU is (1) to "establish a process of review and issuance of travel documents for Vietnamese citizens" who "arrived in the United States before July 12, 1995" and were later "ordered removed from the United States," and (2) "to facilitate the acceptance of all such Vietnamese citizens[.]" *Id.* at 2.

Section Four of the MOU states that Vietnam intends to accept the removal of individuals "who meet[] all the following [four] conditions." *Id.* at 3. The individual must (1) have Vietnamese citizenship and not the citizenship of any other country; (2) have "violated U.S. law," been ordered removed by the United States, and finished serving any U.S. prison sentence; (3) have resided in Vietnam before arriving in the United States and not have the right to reside in any other country; and (4) satisfy a final condition that is redacted in the publicly disclosed version of the MOU. *Id.* at 3–4. Respondents have not disclosed any information about what the fourth condition requires either here or in other litigation before this Court. *See generally* Dkt. Nos. 9, 10, 11; *see also Nguyen v. Scott*, 796 F. Supp. 3d at 714.

Sections Five and Six are redacted nearly in full in the version of the MOU filed in this litigation, Dkt. No. 1-1 at 4, but a version of the MOU filed in *Nguyen v. Scott* shows the sections' titles, making clear that the sections contain "factors that the United States intends to consider before requesting travel documents for a Vietnamese citizen and that Vietnam intends to consider before accepting an individual ordered removed," 796 F. Supp. 3d at 714 (citation modified). The substance of those factors was not disclosed in *Nguyen v. Scott*.

Section Eight of the MOU provides that Vietnam "intends" to issue travel documents or alert the United States of deficiencies within 30 calendar days of receipt. Dkt. No. 1-1 at 5.

On June 9, 2025, ICE rescinded its previous policy of "generally finding that pre-1995 Vietnamese immigrants are not likely to be removed in the reasonably foreseeable future and generally releasing them within 90 [days] of the entry of their final orders of removal." Dkt. No. 1-3 at 2; *see also Nguyen v. Scott*, 796 F. Supp. 3d at 715.

2. Dao's Request for Release

When a final order of removal has been entered, a noncitizen enters a 90-day "removal period." 8 U.S.C. § 1231(a)(1). To ensure a noncitizen's presence for removal and to protect the community from noncitizens who may present a danger, Congress mandated detention during the removal period. 8 U.S.C. § 1231(a)(2). Section 1231(a)(6) authorizes ICE to continue detention of noncitizens after the expiration of the removal period. 8 U.S.C. § 1231(a)(6). Although there is no statutory time limit on detention pursuant to Section 1231(a)(6), the Supreme Court has held that a noncitizen may be detained only "for a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Zadvydas*, 533 U.S. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701. "After this 6-month period, once the [non-citizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* "And for detention to remain reasonable, as the period of prior post removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* Section 1231(a)(6) thus "requir[es] release from long-term detention" when there is no significant likelihood of removal in the reasonably foreseeable future. *Jennings v. Rodriguez*, 583 U.S. 281, 311 (2018) (citation modified).

Dao has been detained beyond the presumptively reasonable six-month custody period: he has been detained for a total of approximately seven-and-a-half months since his removal order became final on May 19, 2025. *See* Dkt. No. 1 at 2. Further, Dao has met his burden of demonstrating "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

While the MOU states that Vietnam "intends" to issue travel documents to eligible citizens within 30 days, Dao calls the Court's attention to the declaration of Tin Thanh Nguyen, filed in *Nguyen v. Scott*, 796 F. Supp. 3d at 717; *see* Dkt. No. 1 at 7–8. In that case, Judge Cartwright noted that Mr. Tin Thanh Nguyen is an attorney who in 2025 "worked on or assisted with the cases of almost a hundred pre-1995 immigrants for whom ICE has requested travel documents from Vietnam," and "[a]cross these cases, Mr. Nguyen has yet to see Vietnam issue a travel document within 30 days or less for a pre-1995 arrival. . . . Rather, in his experience, it can take many months to get any answer from Vietnam about whether it will issue a travel document for these arrivals." 796 F. Supp. 3d at 717 (citation modified). The court found that "the process for procuring travel documents from Vietnam for pre-1995 immigrants continues to be uncertain and protracted." *Id.* at 723. Dao also argues that "because the government has not disclosed full eligibility criteria for repatriation of pre-1995 Vietnamese immigrants, [he is] not even aware of whether he would be eligible if and when an application is made to or decided by Vietnamese officials." Dkt. No. 1 at 8–9.

These facts demonstrate "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future given the uncertain and protracted process for procuring travel documents for pre-1995 Vietnamese immigrants." *Abubaka v. Bondi*, No. 2:25-cv-1889 RSL, 2025 WL 3204369, at *4 (W.D. Wash. Nov. 17, 2025) (citation modified); *see also*

*Zadvydas*, 533 U.S. at 701; *Nguyen v. Scott*, 796 F. Supp. 3d at 723.  Thus, the burden shifts to Respondents to produce "evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Respondents fail to carry their burden. As an initial matter, Respondents concede that (as of December 8, 2025), Dao's travel documents had not been forwarded to Vietnam. *See* Dkt. No. 9 at 8 ("ICE has prepared his travel document and submitted it to headquarters for review and then to be forwarded to Vietnam.").[2] And they provide no estimate for when that will occur, offering only that "ICE is actively working to complete the necessary travel documents request to Vietnam and ICE anticipates that a travel document will be issued shortly after the request is forwarded to the Vietnamese consulate." Dkt. No. 9 at 2. "General indications that U.S. agencies have been in discussions with [the target country] regarding repatriation efforts do not indicate that those discussions will result in the timely removal of Petitioner, as it is unclear whether those efforts will be successful."  *Zhao v. Kelly*, No. CV 17-777-BRO (KES), 2017 WL 1591818, at *4 (C.D. Cal. Apr. 27, 2017); *see also Gilali v. Warden of McHenry Cnty. Jail*, No. 19-CV-837, 2019 WL 5191251, at *5 (E.D. Wis. Oct. 15, 2019) (holding that although the "respondent asserts that [the petitioner's] travel document requests . . . remain pending and ERO continues to follow up on the documents' status . . . [,] this is insufficient. It is merely an assertion of good-faith efforts to secure removal; it does not make removal likely in the reasonably foreseeable future."); *Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006) ("ICE merely asserts that it has followed

---

[2] Respondents assert that "[o]n September 2, 2025, [Dao] refused to fill out and sign his travel documents when requested to do so and stated he should not be in the NWIPC and wants to be deported," and that "[o]n November 14, 2025, [ICE Enforcement and Removal Operations] submitted the Travel Document Request ('TDR') packet after Petitioner's cooperation to Removal and International Operations ('RIO') for review and to then be forwarded to the government of Vietnam by the [Removal] Attache in Vietnam." *Id.* at 6. However, Respondents do not contend that Dao's alleged intransigence alters the relevant timeframe for the Court's analysis under *Zadvydas*. *See generally* Dkt. No. 9. Rather, they aver that Dao's "presumptive [six-month] period has . . . pas[sed] (by nineteen days)" as of December 8, 2025. *Id.* at 7.

In rendering its decision on Dao's petition, the Court does not consider his improper "statement of additional facts" asserted for the first time in his reply brief. Dkt. No. 13 at 1–2; *see Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). The Court also does not entertain Dao's new request for relief in his reply brief. Dkt. No. 13 at 14–15.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 9

up on its request for travel documents from India and done all it can. . . . This is not sufficient evidence to rebut petitioner's showing that he is unlikely to be removed in the reasonably foreseeable future.").

Furthermore, while Respondents assert that Vietnam's "increased cooperation" has led to the issuance of travel documents for "at least 569 final order Vietnamese citizens as of September 11, 2025," Dkt. No. 9 at 8, Dao astutely notes that there is "no indication of the total number of detainees involved, or how many individuals were *not* removed despite Respondents' request that Vietnam issue travel documents," Dkt. No 13 at 6; *see also Nguyen v. Hyde*, 788 F. Supp. 3d at 151 (court could not determine there was a significant likelihood of removal to Vietnam in the reasonably foreseeable future without information such as total number of requests versus actual number of travel documents issued by Vietnam). Nor do Respondents indicate when the requests resulting in the 569 removals were made. *See Nguyen v. Scott*, 796 F. Supp. 3d at 726 ("[Respondent] does not clarify whether travel documents *issued* in FY2025 were also *requested* in FY2025, or if they include requests made in previous fiscal years."). And significantly, Respondents' numbers do not indicate whether and to what extent Vietnam has issued travel documents for Vietnamese individuals who arrived in the United States before July 12, 1995. Respondents can muster only one example of a pre-1995 arrival removed 36 days after that person's travel documents had been forwarded to Vietnam, Dkt. No. 9 at 8 (citing *Hieu Tri Nguyen v. Bondi*, 2:25-cv-01833-JNW, Dkt. No. 19 (W.D. Wash. Nov. 14, 2025), and even then, they offer no guidance on whether Dao's case is similar to *Hieu Tri Nguyen*—or, more importantly, whether Dao meets the criteria for repatriation in the MOU. Thus, Respondents fail to persuasively support their contention that "ICE anticipates receiving travel documents expeditiously because the government of Vietnam has agreed to issue travel documents within 30 days of a request being made." Dkt. No. 9 at 8. That there is "some possibility that Vietnam will accept Petitioner at some

point. . . . is not the same as a significant likelihood that he will be accepted in the reasonably foreseeable future." *Abubaka,* 2025 WL 3204369, at *5 ("Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur." (citing *Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006); *Chun Yat Ma v. Asher*, No. 11-CV-1797-MJP, 2012 WL 1432229, at *4–5 (W.D. Wash. Apr. 25, 2012); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025)). The Court thus finds Dao entitled to release under *Zadvydas*.

**C.     The Court Denies Dao's Request for Injunctive Relief**

Dao requests an order prohibiting Respondents from "re-detain[ing] [him] without first holding a hearing before a neutral decisionmaker at which the government bears the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances since [Dao] was previously released." Dkt. No. 1 at 23. This request does not appear to be attached to any particular ground for relief. *See generally* Dkt. No. 1. Even if it were, the Court would deny it.

Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman*, 977 F.3d at 941–42. Importantly, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953)).

Nowhere in Dao's petition does he allege that redetention is likely, or that such detention is likely to occur without a hearing.[3] As Respondents point out, he "does not allege that his February 2025 detention was unlawful." Dkt. No. 9 at 9. Indeed, Dao's arguments on this topic only discuss why, if he *was* re-detained without a hearing, his due process rights would be violated. *See* Dkt. No. 1 at 17–20. Without evidence that unlawful redetention is likely to occur, Dao's speculation constitutes nothing more than a "mere possibility" that does not entitle him to relief. *Cummings*, 316 F.3d at 897 (citation modified). For this reason, his request for injunctive relief preventing his re-detention is denied.

**D.     The Court Denies Dao's Requests Related to Third Country Removal**

Dao requests an order prohibiting Respondents from "remov[ing] [him] to any third country because Respondents' third-country removal program seeks to impose unconstitutional punishment on its subjects, including imprisonment and other forms of harm," or alternatively, prohibiting them from "remov[ing] or seek[ing] to remove [him] to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings." Dkt. No. 1 at 23.[4] He avers that this relief is merited because "Respondents have developed and implemented a policy and practice of removing individuals to third countries, without first following the procedures in the INA for designation and removal to a third country and without providing fair notice and an opportunity to contest the removal in immigration court." *Id.* at 13. Dao is concerned that Respondents will unlawfully remove him to a third country in violation of the Fifth and Eighth Amendments, 8 U.S.C. § 1231, the Convention Against Torture and its Implementing Regulations, and the Administrative Procedure Act. *Id.* at 10–16; 20–23.

---

[3] Again, the time to make these arguments is in the petition, not in the reply brief. *See* Dkt. No. 13 at 13–14; *Zamani*, 491 F.3d at 997.

[4] Dao does not seek this relief in the alternative, but if the Court granted the former prohibition, the latter would serve no purpose.

Respondents contend that Dao's arguments about third country removal are "speculative, and not ripe for review." Dkt. No. 9 at 9. Respondents argue that "there is no concrete indication that such removal to a third country will occur" and "[t]he record contains no evidence supporting the claim." *Id.* To the contrary, "ICE is currently seeking a travel document solely to Vietnam" and "has no intention of removing [Dao] to a third country." *Id.* at 2, 9; *see also* Dkt. No. 11 at 6 (Officer Brown's declaration stating—under penalty of perjury—that "ICE is currently seeking to remove Petition solely to Vietnam at this time."). Dao replies that "[a] similar argument was rejected in *Nguyen*" and that "the Ninth Circuit has found such voluntary promises insufficient to eliminate the potential irreparable injury that petitioner could face if the promise were withdrawn, particularly given the underlying allegations that third party removals were being conducted rapidly and without an opportunity for due process." Dkt. 13 at 11–12 (quoting *Nguyen v. Scott*, 796 F. Supp. 3d at 737).

Federal courts lack jurisdiction to hear claims that fail to "present an actual case or controversy." *Ariz. Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) (citation modified). To that end, federal courts may not "issue advisory opinions" or "declare rights in hypothetical cases[.]" *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc).

At this juncture, Dao's claims about third country removal are too speculative to form a live controversy. His allegations regarding the Government's efforts to remove individuals to third countries fail to establish a genuine threat of enforcement against *him* that is sufficiently ripe for adjudication. Officer Brown's assurances that the Government is only seeking travel documents for Vietnam—signed under the penalty of perjury—and the lack of evidence put forth by Dao suggesting this statement is untrue as to his specific case, preclude the Court from finding a genuine threat of foreseeable enforcement. Dkt. No. 11 at 6. Dao's petition does not assert that he

is likely to be removed to a third country, and pursuant to the party presentation doctrine, the Court will not invent arguments for him. *See Clark v. Sweeney*, No. 25-52, 2025 WL 3260170, at *1 (U.S. Nov. 24, 2025) ("To put it plainly, courts call balls and strikes; they don't get a turn at bat." (citation modified)); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.").[5] Therefore, the Court lacks jurisdiction to adjudicate Dao's third country removal claims at this time.[6]

### III.  CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus, Dkt. No. 1, is GRANTED IN PART and DENIED IN PART.

1. Respondents shall immediately release Dao from custody, consistent with the terms of his probation, or subject to conditions otherwise compliant with 8 U.S.C. § 1231(a)(3). *See* 8 U.S.C. § 1231(a)(6) ("[I]f released, [an alien ordered removed] shall be subject to the terms of supervision in paragraph (3)).")

---

[5] The Court further notes that despite relying on numerous facts not of record, Dao's petition is almost completely devoid of citations to legal or evidentiary support. *See generally* Dkt. No. 1; LCR 7(b)(1) ("If the motion requires consideration of facts not appearing of record, the movant shall also serve and file copies of all affidavits, declarations, photographic or other evidence presented in support of the motion.").

[6] *See e.g.*, *Tran v. Bondi*, No. 2:25-CV-02335-DGE-TLF, 2025 WL 3725677, at *7 (W.D. Wash. Dec. 24, 2025) ("general assertions that Respondents have designed and implemented a punitive practice of removing individuals to third countries without following procedures required by law" are "too speculative to form a live controversy as to the third country removal issue"); *Huynh v. Bondi*, No. C25-2371-KKE, 2025 WL 3718991, at *6 (W.D. Wash. Dec. 23, 2025) (where "ICE seeks only to remove [petitioner] to Vietnam, and there is no evidence that [petitioner] faces an individual threat of third-country removal," petitioner had "not demonstrated a likelihood of irreparable injury that would entitle him to permanent injunctive relief"); *Sharad K.C. v. Bondi*, No. C25-2071-JLR, 2025 WL 3713844, at *4 (W.D. Wash. Dec. 23, 2025) (where "Petitioner assert[ed] that Federal Respondents have implemented a practice of punitive removal to third countries" but did not "show[] that Federal Respondents seek to remove him to any country other than Nepal, and Federal Respondents represent[ed] that ICE 'is not exploring options for third[-]country removal at this time,'" petitioner's claims were "too speculative to form a live controversy regarding third-country removal" (citation omitted)); *Bui v. Scott*, No. 2:25-CV-02268-TMC, 2025 WL 3706796, at *1 n.1 (W.D. Wash. Dec. 22, 2025) (where petitioner did not "explain[] why he faces an individual threat of third-country removal," he did not "demonstrate[] a likelihood of irreparable injury that would entitle him to permanent injunctive relief").

2. The Parties shall file a Joint Status Report by January 5, 2026, confirming that Petitioner has been released.

3. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions).

Dated this 2nd day of January, 2026.

*Lauren King*
Lauren King
United States District Judge